**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| PAMELA STANLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-CV-507-ERW |
| ) | |
| ANDREW M. SAUL, Commissioner ) | |
| of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the applications of Pamela Stanley ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*. Plaintiff has filed a brief in support of the Complaint (ECF No. 16) and Defendant has filed a brief in support of the Answer (ECF No. 25).

### I. Procedural History

Plaintiff filed her applications for DIB under Title II of the Social Security Act and for SSI under Title XVI of the Act on March 30, 2011. (Tr. 11, 100-113) Plaintiff claimed she

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

became disabled on March 22, 2011[2] because of depression, anxiety, and carpal tunnel in both hands. (Tr. 55) Plaintiff was initially denied relief on August 26, 2011. (Tr. 52-59) At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on January 15, 2013. (Tr. 26-45, 61) By decision dated June 17, 2013, the ALJ found Plaintiff was not disabled. (Tr. 11-21)

Plaintiff appealed the ALJ's decision, and on February 12, 2016, District Judge Catherine D. Perry reversed the decision and remanded the case to the Commissioner. (Tr. 673-84) Pursuant to an Order of Remand from the Appeals Council, the ALJ held a second hearing on September 29, 2016, at which Plaintiff and a vocational expert ("VE") testified. (Tr. 605-45, 685-88) On March 29, 2017, the ALJ issued a decision finding Plaintiff was not under a disability from March 22, 2011 through the date of the decision. (Tr. 558-74) On February 8, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 547-52) Thus, the ALJ's decision stands as the final decision of the Commissioner.

In this action for judicial review, Plaintiff claims the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, Plaintiff argues: (1) the ALJ erred in determining Plaintiff's RFC by failing to support the RFC with "some" medical evidence; (2) the hypothetical question to the vocational expert based on the RFC determination was flawed such that the vocational expert testimony did not support the ALJ's decision that Plaintiff was capable of work; and (3) the ALJ failed to resolve a conflict between the VE testimony and the *Dictionary of Occupational Titles* (DOT).

---

[2] On January 15, 2013, Plaintiff filed a motion to amend her alleged onset date of disability from January 1, 2007 to March 22, 2011. (Tr. 11, 131, 558)

For the reasons that follow, the Court finds the ALJ erred in his evaluation, and the case will be reversed and remanded for further consideration.

## II. Medical Records and Other Evidence before the ALJ

At the hearing before the ALJ, Plaintiff's attorney presented an opening statement. Counsel stated Plaintiff was 47 years old with a high school education. She last worked in 2012. She had problems with her back, neck, and right upper extremity, as well as a long history of depression. She was diagnosed with carpal tunnel syndrome, degenerative disc disease of the cervical spine, and bipolar affective disorder. (Tr. 607-11)

Plaintiff testified she was unable to work because her legs were stiff and weak; her ankles and feet swelled; her back locked up and caused deep throbbing pain; and her neck pain caused sleepless nights. Plaintiff stated her worst problem was her back pain because pain radiated up and down. Plaintiff's treatment for her back included steroids, Flexeril, lotion, morphine, and Hydrocodone. She visited the emergency room over 20 times in the past few years. Plaintiff further testified the pain from her lower back pulsated to her legs, and her feet felt like they were on fire and stepping on needles. With respect to her neck pain, Plaintiff testified the pain was shooting and went to her back, legs, and arms. In addition, Plaintiff's right hand locked up. She stated she spent 80 percent of the day laying down. (Tr. 611-29)

Plaintiff also testified she experienced depression every day since her son was murdered. She had panic attacks daily which made her nervous and shaky and felt like a heart attack. She sometimes heard her son talk to her, and she saw images of him frequently. She experienced crying spells and stopped taking care of her personal needs. Plaintiff did not drive often and only went to doctor appointments, the graveside, or the Family Dollar store. She was able to cook meals in the microwave and make the bed. Her husband did the laundry. (Tr. 629-36)

In a disability report, Plaintiff listed her conditions as arthritis, depression, back pain, bilateral leg and arm pain, anxiety, panic attacks, Graves Disease, stenosis of the spine, and psychosis. (Tr. 789) Plaintiff also completed a function report and stated she was in pain all the time. She was unable to sleep due to leg cramps and back spasms. She prepared microwave meals but did not perform household chores. She sometimes shopped for food. Plaintiff watched TV when she was able to sit up. She had problems getting along with others. Plaintiff reported her conditions affected her ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, see, remember, complete tasks, concentrate, understand, use her hands, and get along with others. (Tr. 799-806)

Plaintiff's husband also completed a function report. He stated Plaintiff did not cook because she was too depressed. She did not perform any chores but looked at the TV and was depressed all day. She went to the store only to buy a couple of items. Plaintiff was unable to lift more than 15 pounds or walk more than a half block. He further reported Plaintiff did not get along with others and became upset easily. (Tr. 825-32)

With respect to Plaintiff's physical impairments, the record shows she saw Elbert H. Cason, M.D., on August 15, 2011 for a consultative examination. Plaintiff complained of carpal tunnel in both wrists. Plaintiff had full range of motion in her back without tenderness or muscle spasms. She could heel and toe walk, stand, and squat. She had normal gait, back motion, straight leg raises, muscle strength in all extremities, and grip strength. Cervical spine, hip, ankle, shoulder, elbow, knee, and wrist motions were all normal. Mental status exam was normal. Dr. Cason assessed history of carpal tunnel syndrome with recurrence of symptoms and hypertension. Dr. Cason opined during an 8-hour workday Plaintiff could occasionally lift/carry less than 10 pounds, stand and/or walk 6 hours, sit about 6 hours, and occasionally climb, stoop,

kneel, crouch, and crawl. She had unlimited ability to reach forward and backward and reach overhead. However, she was limited in gross and fine manipulation of both extremities. (Tr. 296-300)

Plaintiff was treated by Daniel Akwasi Osei, M.D., on April 16, 2012, for complaints of pain in both hands. Physical examination showed no atrophy, with full range of motion in her arms, elbows, and wrists. C-spine exam was positive for spurrowings with radiating symptoms down both arms. (Tr. 359-60) X-rays of the cervical spine revealed mild cervical degenerative disc disease from C3 to C7, mild right foraminal stenosis from C3 to C6, and mild left foraminal stenosis from C2 to C6. (Tr. 361) Nerve conduction studies on May 18, 2012 showed no evidence of carpal tunnel syndrome or right cervical radiculopathy. (Tr. 353) On May 21, 2012, Dr. Osei noted full range of motion, with wrist flexion, extension, and pronosupination being full and intact. Plaintiff's subjective numbness in bilateral hands was of unknown etiology, and Dr. Osei advised carpal tunnel release surgery was not advised given Plaintiff's inconsistent symptoms and the lack of objective findings. He advised conservative treatment. (Tr. 346-47)

On June 14, 2013, Plaintiff was treated by Ivan Stoev, M.D., for complaints of low back pain radiating to her left leg. She also complained of neck pain. Plaintiff advised she was seeking disability. Physical exam revealed full strength throughout 5/5 in all extremities except 4+/5 in the left lower extremity secondary to pain. Her back pain was exacerbated by muscle cramps and spasms in her left leg. Dr. Stoev noted good strength and sensation in Plaintiff's extremities but would continue to follow her for cervical spine disease. She had a mild compression of the S1 nerve root. Dr. Stoev recommended conservative treatment including pain medication and a nerve root injection. (Tr. 1445-46)

5

Hospital records from DePaul Health Center revealed normal range of motion with no tenderness or edema on November 9, 2014. Plaintiff's mood and affect were normal. (Tr. 1192) On December 11, 2014, Plaintiff appeared uncomfortable. She had normal range of motion in her neck with no tenderness. Musculoskeletal exam showed some tenderness but no edema or deformity. Plaintiff had normal muscle tone. Her mood, affect, and speech were normal, and she was not depressed. (Tr. 1256-57) X-rays taken of Plaintiff's lumbar spine, sacrum and coccyx, and hip revealed straightening of the normal cervical and lumbar lordosis; mild loss of intervertebral disc height at C5-C6; and no significant degenerative disease of the lumbar spine, sacrum and coccyx, hip, or pelvis. (Tr. 981)

Subsequent visits to the emergency room between April and October of 2015 showed normal strength and reflexes, and normal mental status exams. She had some tenderness in her lower back and spine but otherwise normal muscle tone and coordination. X-rays showed mild degenerative disc disease. On September 11, 2015, Plaintiff exhibited bilateral weakness on both sides of her lower back. The examiner noted Plaintiff was not attempting to cooperate with the exam. She was upset and tearful due to pain. (Tr. 1279, 1304, 1311, 1318, 1326, 1380).

On October 22, 2015, Plaintiff was examined by Yasuo Ishida, M.D., for complaints of pain. Dr Ishida was unable to obtain a good history from Plaintiff, who was sobbing, crying, and complaining of pain. Plaintiff had difficulty walking and was unable to squat or bend. Examination of Plaintiff's back showed diffuse tenderness. Dr. Ishida was unable to determine Plaintiff's range of motion. She had difficulty sitting on the exam table and moving around the room. Dr. Ishida assessed stenosis of the spine and sciatica which related to her backache; leg pain; and severe bodily pain, etiology unestablished. Dr. Ishida noted the exam was incomplete,

6

and he was unable to reach any conclusions, as Plaintiff was in pain and unable to cooperate. (Tr. 1181-84)

Plaintiff underwent a consultative examination with Alan H. Morris, M.D., on December 7, 2016. Dr. Morris noted Plaintiff was a poor historian. Her chief complaint was low back pain. Plaintiff reported an ability to sit 10 minutes, stand 5 minutes, walk 3 minutes, and lift 5 pounds. She had very limited activities and reported sleeping only 2 hours per night. On physical examination, Dr. Morris noted Plaintiff could walk 50 feet without her cane. Her speech was good but reliability poor. Her alignment of the lumbar spine was normal. However, Plaintiff was unable to heel-toe walk, squat, or lie on the examining table due to complaints of pain. Plaintiff had limitations to shoulder rotation with poor effort and limitations in cervical spine motion and lumbar spine flexion. Although testing muscle strength was difficult because of poor effort, Dr. Morris assessed lower extremity strength at 4/5 bilaterally with no sensory loss. Upper extremities showed intact sensation and muscle strength of 3/5 with poor effort. All x-rays of lumbar spine and pelvis were negative. Dr. Morris assessed low back pain. (Tr. 1520-24, 1532-33)

Dr. Morris also completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) ("MSS-Physical"). He opined Plaintiff could occasionally lift and carry up to 10 pounds. She could sit ten minutes, stand five minutes, and walk three minutes at one time. In an 8-hour work day, Plaintiff could sit two hours, stand one hour, and walk one hour. Dr. Morris stated Plaintiff lay down for the balance of the day. She did not require a cane to ambulate. In addition, Dr. Morris opined Plaintiff could occasionally use her hands to reach and push/pull in all directions. She could operate foot controls occasionally. Based upon Plaintiff's responses in the physician's office, she could never climb, balance, stoop, kneel, crouch, or

7

crawl. She required only occasional exposure to environmental conditions, with a limitation of never driving. Plaintiff was unable to shop, walk one block, use public transportation, or climb a few stairs. (Tr. 1526-31)

Plaintiff underwent a psychological consultative examination with Lloyd Irwin Moore, Ph.D., on August 15, 2011. Dr. Moore found Plaintiff to be a cooperative and fair informant. Her activities were described as reclusive. She demonstrated normal speech, calm motor activity, blunted affect, dysthymic mood, and intact thought processes and memory. She was oriented in all spheres. Dr. Moore noted Plaintiffs simple calculations were poor, and her judgment and psychological insight were fair to good. Plaintiff had not received treatment from formal mental health professionals. She had no history of delusional thinking or suicidal ideation. Dr. Moore noted some minor paranoid ideation. He diagnosed major depressive disorder; anxiety disorder, NOS; personality disorder, NOS; carpal tunnel syndrome; and unemployment due to depression and carpal tunnel syndrome. Dr. Moore assessed moderate impairments in Plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace. (Tr. 306-09)

A consultative psychological evaluation performed by Alison Burner, M.A., on September 25, 2015 revealed Plaintiff was nicely groomed but did not removed her sunglasses during the exam. She was cooperative with normal affect. Plaintiff exhibited no psychomotor agitation, and her speech was clear with normal social language functioning. Her memory, mental control, abstract thinking, insight and judgment, and calculations were average. Plaintiff denied visual hallucinations or auditory disturbances. Plaintiff believed her son was watching her, and his spirit was around her. Ms. Burner opined this was not psychosis but a belief of Plaintiff's faith. Ms. Burner noted Plaintiff was depressed, but the depression was completely

8

related to the death of Plaintiff's son.  Plaintiff reported an ability to care for her daily needs and engage in household duties such as cooking, cleaning, shopping, bill paying, and laundry.  Ms. Burner's impressions included depressed mood with diminished interest in activities, hypersomnia, fatigue and loss of energy, irritability, and indecisiveness.  Ms. Burner opined there was not a psychological symptomology negatively affecting Plaintiff's ability to maintain employment.  Her back problems were the primary source of her inability to work.  Ms. Burner further opined Plaintiff had no impairment in activities of daily living or concentration, pace, or persistence due to psychological issues.  She had mild impairment in social functioning.  Ms. Burner diagnosed major depressive disorder, mild.  (Tr. 1172-76)

On December 7, 2016, Plaintiff saw Ann Levine, Psy.D., for a psychological consultative examination at the request of Missouri Disability Determinations.  Plaintiff's chief complaints were depression, anxiety, and carpal tunnel syndrome.  Plaintiff reported problems sleeping, feelings of worthlessness, suicidal ideation, difficulty concentrating, and lack of pleasure in activities she once enjoyed.  Her anxiety caused shortness of breath and chest pain.  She avoided people and places.  Mental status examination revealed a slow walk with awkward gait.  She was cooperative with fearful affect.  Plaintiff's mood was sad/depressed, and her affect was tearful.  Her speech was normal, but she endorsed repeatedly seeing and hearing her deceased son.  Dr. Levine noted Plaintiff's overall thinking was disturbed.  Plaintiff was oriented to person, place, and time.  Her memory was intact, and she displayed tangential thinking.  Her judgment was fair with limited insight.  Plaintiff reported an ability to sweep and cook meals in the microwave.  She did not grocery shop or do laundry.  Plaintiff watched TV but was unable to concentrate on an entire show.  She did not trust people.  Her concentration, persistence, and pace were mildly impaired.  Dr. Levine also noted vision problems.  Dr. Levine diagnosed persistent depressive

9

disorder with mood congruent psychotic features and unspecified anxiety disorder. Plaintiff's prognosis was guarded, and Dr. Levine suggested Plaintiff continue to be monitored for Posttraumatic Stress Disorder, unspecified schizophrenia spectrum, and other psychotic disorder. (Tr. 1536-40)

A Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment completed by Aine Kresheck, Ph.D., on August 25, 2011 found moderate limitations in Plaintiff's activities of daily living, ability to maintain social functioning, and ability to maintain concentration, persistence, or pace. Plaintiff was also moderately limited in understanding, remembering, and carrying out detailed instructions and maintaining attention and concentration for extended periods. In addition, Plaintiff had moderate limitations in accepting instruction and criticism from supervisors, getting along with co-workers, and adapting to changes in a work setting. Dr. Kresheck concluded Plaintiff retained the ability to perform simple work with limited social contact in the job setting. (Tr. 310-24)

During the most recent administrative hearing the ALJ posed a hypothetical to the VE. The ALJ described an individual with the age, education, and work experience as the Plaintiff, an ability to perform work at the sedentary level, but with limitations requiring a sit/stand option at will. She could never climb ladders, ropes, or scaffolds; never crawl; occasionally crouch, stoop, kneel, and balance; occasionally rotate, flex, and extend her neck; and frequently handle, finger, and feel. Further, the hypothetical individual should avoid exposure to operational control, moving machinery, and unprotected heights. Work was limited to simple, routine repetitive tasks involving simple work-related decisions with few, if any, workplace changes. In addition, the job requirements should not involve interaction with the public and only occasional interaction with co-workers, with no tandem tasks and occasional supervision. Given this RFC,

10

the VE testified Plaintiff would be unable to perform her past work but could work as a weave-defect-charting clerk, a dowel inspector, and a label pinker. These jobs were available in significant numbers in the national economy. However, if the individual could only occasionally handle, finger, and feel, the jobs would be eliminated, and no jobs would be available. (Tr. 641-64)

### III. Discussion

#### A. <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, Plaintiff must prove he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). First, the claimant

must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish his impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R.

§§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove she is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

The Court must consider evidence which supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

**B. The ALJ's Decision**

The ALJ's Decision conforms to the five-step process outlined above. The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, and she had not engaged in substantial gainful activity since March 22, 2011, her amended alleged onset date. The ALJ found Plaintiff's degenerative disc disease, major depressive disorder, and bipolar disorder were severe impairments, but these impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 561)[3] Specifically, the ALJ analyzed Plaintiff's eligibility for Listing 1.04 (Disorders of the Spine) and 12.04 (Affective Disorders). (Tr. 558-65)

After considering the entire record, the ALJ found Plaintiff had the RFC to perform sedentary work with the following limitations:

> work . . . that includes a sit/stand option defined as allowing the claimant to alternate between sitting and standing positions at will; never crawl or climb ladders, ropes, or scaffolds; occasionally crouch, stoop, knee[l], and balance; occasionally rotate, flex, and extend the neck; frequently handle, finger, and feel; avoid all exposure to the operational control of moving machinery and unprotected heights; work limited to simple, routine, and repetitive tasks in a work environment involving only simple work-related decisions and with few, if any workplace changes: job requirements do not involve public interaction, interaction with co-workers is casual and infrequent with no tandem tasks; and occasional supervision.

(Tr. 566)

In making this finding, the ALJ summarized the relevant medical records, as well as Plaintiff's own statements regarding her abilities, symptoms and activities of daily living. While the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the ALJ further determined Plaintiff's statements about the

---

[3] The ALJ additionally found Plaintiff's hypertension, osteoarthritis, bronchitis, squamous intraepithelial lesion, Graves' Disease, history of carpal tunnel syndrome, fibromyalgia, IBS, and insomnia were non-severe. (Tr. 561) Plaintiff does not challenge these findings.

14

intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 566-73)

The ALJ determined Plaintiff was unable to perform any of her past relevant work. However, based on her age, education, work experience, RFC, and VE testimony, the ALJ concluded Plaintiff could perform work existing in significant numbers in the national economy, and specifically, as a weave-defect-charting clerk, dowel inspector, or label pinker. (Tr. 573-74) The ALJ therefore found Plaintiff was not under a disability from March 22, 2011 through the date of the decision. (Tr. 574)

C. **Analysis of Issues Presented**

In her initial brief to this Court, Plaintiff argues: : (1) the ALJ erred in determining Plaintiff's RFC by failing to support the RFC with "some" medical evidence; (2) the hypothetical question to the vocational expert based on the RFC determination was flawed such that the vocational expert testimony did not support the ALJ's decision that Plaintiff was capable of work; and (3) the ALJ failed to resolve a conflict between the VE testimony and the *Dictionary of Occupational Titles* (DOT). The Court addresses Plaintiff's proffered issues below.

1. **The ALJ erred in determining Plaintiff's RFC by failing to support the RFC finding with some medical evidence**

Plaintiff claims the ALJ erred in his RFC assessment because the ALJ failed to support his decision with medical evidence. RFC is defined as the most that a claimant can still do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations.'" *Page v.*

*Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Because "'[t]he ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.'" *Martise*, 641 F.3d at 923 (quoting *Vossen v. Astrue,* 612 F.3d 1011, 1016 (8th Cir.2010)). "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen*, 612 F.3d at 1016; *Martise*, 641 F.3d at 923.

Upon review of the evidence in the record, the Court finds the ALJ failed to properly support his RFC finding with medical evidence. With respect to Plaintiff's physical impairments, the record shows Dr. Morris, the consultative examiner, limited Plaintiff to sitting up to two hours, standing up to one hour, and walking up to one hour in an eight-hour work day. (Tr. 1527) The ALJ gave this opinion little weight "where the report does not support the assigned limitations." (Tr. 572) Dr. Morris' opinion indicates he relied primarily on Plaintiff's subjective complaints, and Dr. Morris acknowledged Plaintiff put forth poor effort. (Tr. 1521-22) The Court notes the ALJ was entitled to discount Dr. Morris' opinions insofar as they relied upon Plaintiff's subjective complaints. *See Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (finding the ALJ did not err in discounting medical opinions because they were based largely on the claimant's subjective complaints); *Kirby v. Astrue,* 500 F.3d 705, 709 (8th Cir.2007) (holding that the ALJ was entitled to discount an opinion where the opinion was based largely on the claimant's subjective complaints rather than on objective medical evidence).

Instead, the ALJ afforded some weight to Dr. Cason, another consultative examiner, who opined that in an 8-hour work day, Plaintiff was able to occasionally lift/carry less than 10 pounds, stand and/or walk 6 hours, sit about 6 hours, and occasionally climb, stoop, kneel,

crouch, and crawl. (Tr. 296-300, 572) Other medical evidence in the record supports this finding, including emergency room visits which found normal muscle tone and coordination, and normal range of motion in Plaintiff's lower back with some tenderness. (Tr. 1192, 1256, 1279, 1304, 1311, 1318, 1326, 1380). In addition, X-rays were normal with no significant degenerative disease of the lumbar spine, sacrum and coccyx, hip, or pelvis. (Tr. 981) As previously stated, some medical evidence must support the ALJ's RFC determination, but the ALJ is not required to rely on a specific medical opinion. *Hensley v. Colvin,* 829 F.3d 926, 932 (8th Cir. 2016). Thus, the Court finds the ALJ properly supported his RFC finding that Plaintiff could perform sedentary work with a sit/stand option at will and with additional postural and environmental limitations.

However, the Court finds the ALJ failed to support his RFC finding with respect to Plaintiff's mental impairments. The ALJ gave little weight to Ms. Burner and great weight to Dr. Moore's opinion from 2011 only to the extent Plaintiff had no more than moderate limitations in any area of mental functioning. The ALJ gave great weight to the State agency psychological consultant, who found Plaintiff could perform simple work with limited social contact. (Tr. 572) The Court notes "the opinions of nonexamining sources are generally ... given less weight than those of examining sources." *Willcockson v. Astrue,* 540 F.3d 878, 880 (8th Cir.2008).

While the ALJ mentioned Dr. Levine's consultative examination and opinion, review of the record shows the ALJ did not assign any weight to Dr. Levine in assessing Plaintiff's RFC. Dr. Levine most recently evaluated Plaintiff and noted Plaintiff's prognosis was guarded, and Plaintiff should continue to be monitored for PTSD, schizophrenia, and other psychotic disorder.

Plaintiff's daily activities were minimal, and she could not be around people. She was tearful and sad, and she reported hallucinations and suicidal thoughts. (Tr. 1537-40)

While Plaintiff reported to both Ms. Burner and Dr. Levine that she was able to watch television, care for her daily needs, perform some household chores, and shop for a couple items, this fails to support the ALJ's decision that Plaintiff could work 8 hours a day for 5 days a week and have even infrequent interaction with co-workers and occasional supervision. Indeed, the ALJ also assigned great weight to Plaintiff's husband's function report, which indicated minimal activity. (Tr. 566, 825-32) The Eighth Circuit has consistently held the ability to do light housework or prepare food is sufficient to support a finding that a claimant can perform full-time competitive work. *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 379 (8th Cir. 2016).

Further, Dr. Levine's opinion may indicate more than moderate limitations, and the ALJ should assess this in the first instance with respect to Plaintiff's ability to work. "The ALJ's RFC determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Tinervia v. Astrue*, No. 4:08CV00462 FRB, 2009 WL 2884738, at *11 (E.D. Mo. Sept. 3, 2009) (citations omitted); *see also Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001) (citations omitted) (finding that medical evidence "must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' . . . ."). Here, the Court finds, in the absence of any reason for disregarding Dr. Levine's opinion in the RFC assessment, substantial evidence in the record as a whole does not support the ALJ's RFC finding with respect to Plaintiff's mental impairments.

"Usually when a claimant was improperly denied benefits, the case is remanded to the ALJ for further administrative proceedings. Where the record shows overwhelming support for a

finding of disability, however, the court may eschew remand and direct that benefits be granted."
*Hess v. Colvin*, No. 4:14CV1593 CDP, 2015 WL 5568056, at *13 (E.D. Mo. Sept. 22, 2015) (citations omitted). Here the Court is unable to say that the record overwhelmingly supports a finding of disability. Therefore, the Court will reverse the Commissioner's decision and remand the case for further proceedings.

## IV. Conclusion

For the reasons state above, the Court finds reversal and remand is appropriate in this case. On remand, the ALJ shall appropriately review and re-evaluate the current evidentiary record and consider ordering consultative examinations or re-contacting examining physicians to assist in determining Plaintiff's entitlement to disability benefits. Specifically, the ALJ should determine the amount of weight to give Dr. Levine's opinion in evaluating Plaintiff's RFC. Further, to the extent the RFC determination changes, the ALJ should submit a new hypothetical question to the VE which properly reflects the ALJ's RFC finding. Finally, the ALJ should resolve any conflicts between the VE's testimony and the *DOT* with respect to Plaintiff's ability to perform certain jobs.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **REVERSED** and the case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum and Order.

An appropriate Order of Remand shall accompany this Memorandum and Order.

Dated this 27th day of September, 2019.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE